Daniel C. Girard (State Bar No. 114826)
*dcg@girardgibbs.com*
Jordan Elias (State Bar No. 228731)
*je@girardgibbs.com*
Scott M. Grzenczyk (State Bar No. 279309)
*smg@girardgibbs.com*
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN CROOK, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GREEN DOT CORPORATION, GREEN DOT BANK, MASTERCARD INCORPORATED, and MASTERCARD INTERNATIONAL INCORPORATED,<br><br>Defendants. | Case No. 2:16-cv-04172<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Kathleen Crook ("Plaintiff"), individually and on behalf of others similarly situated, alleges as follows:

## SUMMARY OF THE ACTION

1. This case concerns an extended disruption of consumer access to funds in accounts linked to the Walmart MoneyCard, a pre-paid debit card issued and serviced by Defendants Green Dot Corporation and Green Dot Bank (collectively, "Green Dot").

2. This disruption of service, which occurred in May 2016, was illegal. It prevented Plaintiff and other account holders from spending or withdrawing funds in their MoneyCard accounts for several days—denying access to many consumers' only source of money.

3. On behalf of a class of similarly situated account holders, Plaintiff seeks appropriate remedial relief.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d) because the total amount in controversy exceeds $5,000,000 and Plaintiff and Class members are citizens of different states than Defendants.

5. This Court has personal jurisdiction over Green Dot, which is headquartered in Pasadena, California. The Court has personal jurisdiction over all Defendants because they conduct extensive business in California and a substantial part of the acts of omissions giving rise to these claims occurred in this District.

6. Venue in this District is proper under 28 U.S.C. § 1391. Green Dot's principal place of business is in this District. A substantial portion of the acts or omissions giving rise to these claims occurred in this District. All Defendants are authorized to conduct business in this District, conduct substantial business in this District, and have purposefully availed themselves of the laws and markets of this District.

## PARTIES

7. Plaintiff resides and is domiciled in Oakland Park, Florida. Plaintiff has used a MoneyCard for approximately six months. She relies on her MoneyCard to pay the rent and buy food. Her employer deposits her wages directly to her MoneyCard. On approximately May 17, 2016, Plaintiff misplaced her MoneyCard and contacted Walmart for a replacement. A Walmart representative informed her that the MoneyCard system was down and undergoing updates. As a result, Plaintiff was unable to access her funds or order a new card. The extended disruption to MoneyCard services prevented Plaintiff from paying her rent on time, and from buying food.

8. Defendant Green Dot Corporation is a Delaware corporation with its principal place of business in Pasadena, California.

9. Defendant Green Dot Bank is a federally chartered savings bank headquartered in Pasadena, California.

10. Defendant MasterCard Incorporated is a Delaware corporation with its principal place of business in Purchase, New York.

11. Defendant MasterCard International Incorporated, a subsidiary of MasterCard Incorporated, is a Delaware corporation with its principal place of business in Purchase, New York.

## COMMON ALLEGATIONS OF FACT

**A.  The MoneyCard**

12. Green Dot operates the Walmart MoneyCard, a prepaid debit card that can be loaded and reloaded with liquid funds. Ordinarily, holders of the MoneyCard can use it to purchase goods or services from any merchant accepting credit or debit cards.

13. Many MoneyCard users lack access to mainstream financial services offered by retail banks.

14. Many employers use MoneyCard services to deposit their employees' wages directly to a MoneyCard.

### B. The Extended MoneyCard Disruption

15. Green Dot notified some MoneyCard account holders that MoneyCard services would be disrupted temporarily—for 12 hours—beginning the evening of May 14, 2016.

16. According to the notification, the disruption was necessary for Defendants to transition to MasterCard Payment Transactions Services. Once this transition was completed, the MasterCard Defendants would process all MoneyCard transactions.

17. MoneyCard services were frozen and unavailable, not merely for 12 hours, but for several days in May 2016. During this time the holders of MoneyCard accounts could not spend, withdraw, or otherwise access the funds in their accounts.

18. Being cut off from their account funds for a period of days caused substantial hardship to consumers who rely on MoneyCard accounts to pay for essential goods and services.

### C. The Unenforceable Arbitration Provision

19. The MoneyCard Cardholder Agreement provides that certain disputes must be resolved in individual arbitrations. That provision, however, is procedurally and substantively unconscionable. First, the agreement is a form contract of adhesion imposed by an entity, Green Dot, that possesses superior bargaining power. Second, many MoneyCard account holders lack access to other financial services, and many employers pay their workers only through MoneyCards. A significant number of consumers thus have no choice but to rely on MoneyCard services for basic needs. The arbitration clause in the MoneyCard Cardholder Agreement is contrary to public policy and unenforceable.

### CLASS ALLEGATIONS

20. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this suit as a class action on behalf of a proposed Class defined as:

> All persons in the United States who held a Walmart MoneyCard as of May 14, 2016.

Excluded from the proposed Class are Defendants; Defendants' parents, affiliates, subsidiaries, successors, assigns, officers, and directors; any entity in which Defendants have a controlling interest; and Judges to whom this case is assigned and members of their immediate families.

21.   <u>Numerosity and Ascertainability</u>.  The Class members number in the tens of thousands and are too numerous to be joined in a single action.  The Class members can be readily identified based on records in Defendants' possession, custody, and control.

22.   <u>Commonality and Predominance</u>.  Common questions of law and fact exist as to all Class members and predominate over any individual questions.  These common questions include, without limitation:

    a.   Whether Green Dot's suspension of access to MoneyCard funds breached a contract for bailment;

    b.   Whether Green Dot unlawfully converted funds belonging to Plaintiff and the Class;

    c.   Whether Green Dot owed, and breached, duties of care to Plaintiff and the Class;

    d.   Whether Defendants violated the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*;

    e.   Whether Green Dot was unjustly enriched; and

    f.   Whether Plaintiff and the Class are entitled to damages, restitution, and/or other appropriate relief.

23.   <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Class.  Her claims, like those of each Class member, arise from the extended disruption of MoneyCard services in May 2016.

24.   <u>Adequacy of Representation</u>.  Plaintiff is an adequate Class representative. Her interests align with the interests of the Class members, and she has retained counsel experienced in consumer protection litigation to pursue this action.  Plaintiff and her counsel will fairly and adequately protect the interests of Class members.

25. <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Injuries sustained by individual Class members are too small to make the prosecution of individual actions economically feasible.  Individualized litigation also would risk inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  A class action presents fewer management difficulties and provides the benefits of judicial economy and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**

**Breach of Bailment Contract**

26. Plaintiff incorporates the foregoing allegations by reference.

27. When they opened MoneyCard accounts, Plaintiff and Class members entered into a contract for bailment with Green Dot.

28. Funds constituting the personal property of Plaintiff and Class members were delivered to Green Dot, with its consent, to keep for their benefit.

29. Funds constituting the personal property of Plaintiff and Class members were delivered to Green Dot for the specific purpose of holding these funds in trust for, and permitting access to and use of these funds by, Plaintiff and Class members.

30. The terms of the bailment contract between Green Dot, on one hand, and Plaintiff and Class members, on the other, included an understanding that the funds constituting the personal property of Plaintiff and Class members would be returned to them or expended in transactions as they directed.

31. In exchange for Green Dot's promise that they would have access to and use of the funds in their MoneyCard accounts, Plaintiff and Class members paid fees and other charges to Green Dot.

32. Green Dot accepted delivery of funds constituting the personal property of Plaintiff and Class members.

33. Green Dot did not faithfully execute the purpose of its bailment contract with Plaintiff and Class members. Green Dot breached the contract by suspending account holders' access to their MoneyCard funds for a period of several days.

34. Green Dot's failure to redeliver Plaintiff's and Class members' funds at their direction, as promised, was the fault of Green Dot and not accidental.

35. Green Dot's breach of bailment contract directly and proximately caused Plaintiff and Class members to incur damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Conversion

36. Plaintiff incorporates the foregoing allegations by reference.

37. Plaintiff and Class members owned, possessed, and had a right to possess the funds in their MoneyCard accounts. The funds in each such account constituted specific and identifiable sums.

38. Green Dot intentionally and substantially interfered with Plaintiff's and Class members' personal property by preventing Plaintiff and Class members from having access to the funds in their MoneyCard accounts.

39. Green Dot, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and Class members, without justification.

40. Green Dot's wrongful exercise of control over Plaintiff's and Class members' personal property constitutes conversion.

41. Plaintiff and Class members neither assented to nor ratified Green Dot's interference with the funds in their MoneyCard accounts.

42. As a direct and proximate result of Green Dot's conversion, Plaintiff and Class members were harmed.

43. Plaintiff and Class members are entitled to recover from Green Dot damages and costs permitted by law.

### THIRD CLAIM FOR RELIEF

### Negligence

44. Plaintiff incorporates the foregoing allegations by reference.

45. Green Dot owed duties of care to Plaintiff and Class members encompassing the duty to afford them access to and use of funds belonging to them.

46. Green Dot breached this duty by depriving Plaintiff and Class members of access to and use of the funds in their MoneyCard accounts for an extended time period.

47. Green Dot knew, or in the exercise of reasonable diligence should have known, that breaching this duty would harm Plaintiff and Class members. It was reasonably foreseeable to Green Dot that depriving consumers of access to their MoneyCard funds for an extended time period would eliminate or detract from their ability to purchase basic necessities of life.

48. The public policy of preventing future harm supports tort liability and the finding of a special relationship between Green Dot and Plaintiff and Class members. Green Dot's conduct in effectively freezing Plaintiff's and Class members' assets for several days deviates from socially useful conduct. It was reasonably foreseeable to Green Dot that effectively freezing Plaintiff's and Class members' assets for several days would cause them hardship and injuries. There is a very close connection between Green Dot's negligence and the ensuing harm to Plaintiff and Class members. If financial services companies are not held accountable for such conduct, they will not take steps to prevent similar account disruptions in the future.

49. As a direct and proximate result of Green Dot's negligence, Plaintiff and Class members were damaged in an amount be proven at trial.

### FOURTH CLAIM FOR RELIEF

### Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

50. Plaintiff incorporates the foregoing allegations by reference.

51. Defendants' acts and practices constitute unlawful and unfair acts or practices violative of the Unfair Competition Law, California Business and Professions Code section 17200, *et seq*.

52. Defendants' acts and practices constitute unlawful business practices in that they are in breach of a bailment contract and constitute unlawful conversion and negligence.

53. Defendants' acts and practices constitute unfair practices in that (i) they are unethical, immoral, unscrupulous, oppressive, and substantially injurious to consumers; (ii) any utility of Defendants' conduct is outweighed by its harm to consumers; and (iii) the harm described herein was not reasonably avoidable by consumers.

54. As a direct and proximate result of Defendants' unlawful and unfair business practices, Plaintiff and Class members lost money or property.

55. Plaintiff and Class members are entitled to restitution and/or other equitable relief, together with reasonable attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF
### Unjust Enrichment

56. Plaintiff incorporates the foregoing allegations by reference.

57. Plaintiff and Class members conferred a monetary benefit upon Green Dot.

58. Green Dot wrongfully impeded Plaintiff and Class members' access to the funds it held in trust for them.

59. Retention by Green Dot of profits traceable to MoneyCard services would be unjust and inequitable.

60. Plaintiff and Class members seek an order requiring Green Dot to disgorge its ill-gotten gain and make restitution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of others similarly situated, respectfully requests that this Court enter judgment through an order:

A. Certifying the Class and appointing Plaintiff and her counsel to represent the Class;

B. Finding Defendants' conduct unlawful and unfair;

C. Awarding Plaintiff and Class members actual damages, restitution, and/or other appropriate relief;

D. Awarding reasonable attorneys' fees and costs as permitted by law;

E. Awarding pre-judgment interest as prescribed by law; and

F. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all claims so triable.

DATED: June 10, 2016

Respectfully submitted,

**GIRARD GIBBS LLP**

By: /s/ *Daniel C. Girard*

Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Scott M. Grzenczyk (State Bar No. 279309)
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
*dcg@girardgibbs.com*
*je@girardgibbs.com*
*smg@girardgibbs.com*

*Counsel for Plaintiff*